UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

AMC FILM HOLDINGS LLC,

                Plaintiff,                    **MEMORANDUM OF DECISION AND ORDER**

    -v.-                                      03-CV-3835 (DRH)(ARL)

MAX J. ROSENBERG, REARGUARD
PRODUCTIONS, INC., and TV MATTERS,

                Defendants.
_____

**Appearances:**

**For the Plaintiff:**
**James W. Dabney**
**David B. Hennes**
**Hayley W. Werner**
Fried Frank Harris Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004

**For the Defendant TV Matters:**
**Gregory A. Sioris**
350 Fifth Avenue
Suite 7606
New York, New York 10118

**HURLEY, District Judge:**

        Presently before the Court are the motions by Plaintiff AMC Film Holdings LLC ("AMC") and defendant TV Matters for summary judgment. TV Matters also moves for a default judgment against defendants Rearguard Productions, Inc. ("Rearguard") and Max J. Rosenberg ("Rosenberg"). For the reasons stated below, the motions for summary judgment are denied and TV Matters' motion for a default judgment is denied pending notation of the default by the Clerk of the Court.

**BACKGROUND**

This copyright infringement action involves three motion pictures titled "Asylum," "And Now the Screaming Starts," and "The Beast Must Die" (collectively, the "Motion Pictures") which were all produced by Rosenberg. Amicus Productions ("Amicus") was the original owner of the copyrights in the Motion Pictures and registered a claim to them with the United States Copyright Office (the "Copyright Office") in 1986. According to Plaintiff, the rights to these copyrights were ultimately assigned to Plaintiff through a series of transfers as follows: (1) the copyrights to the Motion Pictures were assigned from Amicus to Rearguard "[a]s of not later than April 22, 1996" (Pl.'s Rule 56.1 Statement ¶ 4); (2) on April 22, 1996, Rearguard assigned the copyrights to Delta Ventures Limited ("Delta") (*id.* ¶ 5); (3) on March 31, 1999, Delta assigned the copyrights to Southern Star Circle, plc ("Southern Star") (*id.* ¶ 6); (4) on October 31, 2001, Southern Star assigned the copyrights to American Movie Classics Company ("AMCC") (*id.* ¶ 7); and (5) on January 1, 2003, AMCC assigned the copyrights to Plaintiff (*id.* ¶ 8). Neither Delta nor Southern Star recorded its rights to the Motion Pictures with the Copyright Office.[1] AMCC, however, recorded its rights on April 18, 2002 and Plaintiff registered its rights after initiating the present action.

The parties agree to the following facts: In 1999, despite the fact that Rearguard had already assigned its rights to the Motion Pictures to Delta years earlier, Rearguard entered into a licensing agreement with TV Matters whereby Rearguard purported to authorize TV Matters to copy and distribute copies of the Motion Pictures. Thereafter, on May 7, 1999, TV

---

[1] On September 1, 2004, Plaintiff filed the April 26, 1996 agreement between Rearguard and Delta with the Copyright Office. (*See* TV Matters Ex. 14; Pl.'s Second Rule 56.1(b) Statement ¶ "29[sic]".)

Matters entered into an agreement with Image Entertainment, Inc. ("Image") by which TV Matters purported to authorize Image to reproduce and distribute copies of the Motion Pictures in home video formats in the United States and Canada. Pursuant to the TV Matters/Image agreement, TV Matters reproduced masters of the Motion Pictures and provided these masters to Image. Image then reproduced the masters to create thousands of video tapes and DVDs which it subsequently distributed to retailers for sale to the public.

In late October 2001, an e-mail correspondence was exchanged between Jerome Blake, an attorney from an affiliate of Plaintiff, and Jan Jansen, the President of TV Matters. Mr. Blake advised TV Matters that Rearguard had sold all of its rights to the Motion Pictures to Delta in 1996, "three years before Rearguard entered into its agreement with TV Matters. . . . In 1999, Rearguard did not have the right to enter into its agreement with TV Matters, because Rearguard no longer owned any rights to these movies." (Aff. of Hayley W. Werner, dated July 15, 2004 ("Werner Aff."), Ex. J.) Although Plaintiff alleges that TV Matters took no action to investigate the validity of the claims made by Mr. Blake and did not instruct Image to stop distributing copies of the Motion Pictures, TV Matters counters that it "saw no reason for it to cease distribution of these pictures, particularly since prior to entering into the contract with Rosenberg[,] TV Matters' legal counsel conducted due diligence regarding the titles to these three motion pictures and did not find any registration certificates in the Copyright Office showing conflicting ownership of any rights in these pictures in order to contradict the warranties made by Rearguard/Rosenberg." (TV Matters' Local 56.1 Statement ¶ 21.) Apparently this is because, as stated above, neither Delta nor Southern Star recorded its rights to the Motion Pictures with the Copyright Office. Thus, pursuant to the TV Matters/Image

agreement, Image continued to distribute copies of the Motion Pictures after October 2001.

On May 23, 2002, Sharon Davis, an attorney on behalf of AMCC, Plaintiff's predecessor in interest, wrote TV Matters and asserted AMCC's ownership of the copyrights in the Motion Pictures. TV Matters contends that in response to this letter, it told Image to stop selling copies of the Motion Pictures until it "could figure out what was going on with the titles to these pictures," (Decl. of Jan Jansen, dated Oct. 18, 2004 ("Jansen Decl."), ¶ 6), and that Image did cease distribution by June 12, 2002, (*id.*).

On August 5, 2003, Plaintiff initiated the instant action against Rearguard, Rosenberg, and TV Matters. Sometime thereafter, Plaintiff registered its rights to the Motion Pictures with the Copyright Office. On October 2, 2003, TV Matters filed cross-claims against Rearguard and Rosenberg seeking, inter alia, indemnity pursuant to its agreement with these defendants. The cross-claims were amended on March 16, 2004. To date, neither Rosenberg nor Rearguard have responded to either Plaintiff's Complaint or the cross-claims filed by TV Matters.

Plaintiff now moves for summary judgment, seeking an order declaring that all three defendants are jointly and severally liable for copyright infringement pursuant to 17 U.S.C. § 501(a) due to their alleged unauthorized reproduction and distribution of copies of the Motion Pictures in violation of Plaintiff's rights under 17 U.S.C. § 106. TV Matters cross-moves for summary judgment dismissing Plaintiff's Complaint and moves for a default judgment against Rosenberg and Rearguard. The Court begins with a discussion of TV Matters' threshold argument, to wit, that the Court lacks jurisdiction over the instant dispute.

## DISCUSSION

### I.   *The Court has Jurisdiction Over Plaintiff's Copyright Infringement Claims*

TV Matters argues that the Court lacks jurisdiction over Plaintiff's claims because Plaintiff did not register its copyright to the Motion Pictures prior to filing the instant lawsuit. It is undisputed that Amicus, the original owner of the copyrights, registered its copyrights in the Motion Pictures in 1986. It is also undisputed that Plaintiff's predecessor, AMCC, registered a claim to these rights on April 18, 2002, and that Plaintiff filed its copyright registrations subsequent to August 5, 2003, the date the action was commenced.

The Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). This registration requirement is jurisdictional. *See Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002).

Section 205(d) of the Copyright Act formerly provided that "[n]o person claiming by virtue of a transfer to be the owner of copyright or of any exclusive right under a copyright is entitled to institute an action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action." This requirement was repealed effective March 1, 1989, so that the new version of subdivision (d) reads as follows:

> (d) Priority Between Conflicting Transfers.--As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later

5

> transfer. Otherwise the later transfer prevails if recorded first in
> such manner, and if taken in good faith, for valuable consideration
> or on the basis of a binding promise to pay royalties, and without
> notice of the earlier transfer.

17 U.S.C. § 205(d). Accordingly, there is no longer a requirement that the transfer be recorded in order for the transferee to commence an action. *See Lida, Inc. v. Texollini, Inc.*, 768 F. Supp. 439, 443 n.4 (S.D.N.Y. 1991) (noting that the requirement for recordation of transfers has been eliminated); *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, No. 87 CIV. 5775, 1989 WL 117704, at *6 n.1 (S.D.N.Y. Oct. 2, 1989) (same).

The cases cited by TV Matters in support of its jurisdictional argument are inapposite to the case at bar as none of them involves a lawsuit filed by a transferee. In that regard, TV Matters' reliance on *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003) is particularly misplaced. In that case, the Second Circuit held that "registration of a claim on an original work does not create subject matter jurisdiction with respect to a suit for infringement of the original's unregistered derivative." *Id.* at 115. The "unregistered derivative" referred to a subsequently designed larger version of the original product. As the only rights at stake in the present action are the rights to the Motion Pictures and there are no derivative products at issue, the *Well-Made Toy* case, which did not address the rights of a transferee, is not relevant to the Court's analysis.

Accordingly, because the copyrights to the Motion Pictures were filed by Amicus in 1986, and because a transferee is no longer required to register its instruments of transfer as a prerequisite to filing a lawsuit, TV Matters' jurisdictional argument is without merit. Thus, the Court finds that it has jurisdiction over the present action.

## II.     *Plaintiff has Established its Ownership in the Copyrights*

The federal copyright laws proscribe any unauthorized copying of an owner's copyrighted works. 17 U.S.C. § 501(a). Thus, to prevail in a copyright infringement action, a plaintiff must show both ownership of the copyright and copying by the defendant. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985). TV Matters contends that there are genuine issue of material fact in dispute over Plaintiff's chain of title and present ownership of the copyrights at issue. More specifically, in its opposition papers to Plaintiff's motion, TV Matters argues that the declarations proffered by Plaintiff in support of its chain of title are not based on personal knowledge of the declarants and contain facts that are inadmissible. In response, Plaintiff submits additional declarations in its reply papers to further establish a foundation for its claim of ownership.

As discussed above, Plaintiff claims ownership of the copyrights in the Motion Pictures through a series of assignments. In support of its ownership claim, Plaintiff submits that "[a]s of not later than April 22, 1996," the copyrights were assigned from Amicus to Rearguard. (Pl.s' Rule 56.1 Statement ¶ 4.) Plaintiff relies upon the deposition testimony of Rosenberg, the former President of Amicus, wherein he states that when Amicus dissolved, his former partner assigned "everything" to him and he, in turn, assigned "everything" to Reargaurd. (Werner Aff. Ex. D at 25-26.) TV Matters does not contest this assignment; rather, it merely denies the date provided by Plaintiff because Rosenberg did not provide a date for the assignment in his deposition testimony. (TV Matters' Rule 56.1 Statement ¶ 4.) In any event, the transfer between Amicus and Rearguard is not disputed.

In support of the subsequent transfers, Plaintiff submits the following evidence:

7

(1) an agreement dated April 22, 1996 between Rearguard and Delta, signed by both parties, whereby Rearguard assigns to Delta the "sole and exclusive copyright" in the Motion Pictures (*see* Werner Aff Ex. G) and the declaration of Felicity Irlam, dated Nov. 11, 2004 ("Irlam Decl."), the company secretary of Delta, wherein she states that she personally signed this agreement on behalf of Delta (Irlam Decl. ¶ 2); (2) an agreement between Delta and Southern Star, dated March 31, 1999, signed by the same person on behalf of both parties, whereby Delta assigns the copyrights to Southern Star (*see* Aff. of David Sehring, dated July 13, 2004 ("Sehring Aff."), Ex. A), the Irlam Decl. wherein she states that she signed this agreement on behalf of both Delta and its then corporate parent, Southern Star (Irlam Decl. ¶ 3), and the Declaration of Clare Birks, dated Nov. 9, 2004 ("Birks Aff.") wherein she states that she is the Chief Executive of Southern Star Entertainment UK plc, formerly Southern Star, that she has worked for Southern Star since 1997, and that the Delta/Southern Star agreement submitted by Plaintiff is a true copy of the contract (Birks Aff. ¶¶ 1-2); (3) an agreement between Southern Star and AMCC, dated October 31, 2001, signed by both parties, whereby Southern Star sells the copyrights to AMCC (*see* Sehring Aff. Ex. B) and the Birks Aff, wherein she states that the agreement submitted is a true copy (Birks Aff. ¶ 6); and (4) an agreement between AMCC and Plaintiff, dated January 1, 2003, signed by the same person on behalf of both parties, whereby AMCC assigns the copyright to Plaintiff (*see* Sehring Aff. Ex. C).

Section 204(a) of the Copyright Act provides that "[a] transfer of copyright ownership, . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). The purpose of this section "is to protect copyright

8

holders from persons mistakenly or fraudulently claiming oral licenses." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superceded on other grounds as stated in, Weissman v. Freeman*, 868 F.2d 1313 (2d Cir. 1989).

> Section 204(a) does not mandate a particular form of transfer document. As Judge Kozinski has noted, a writing memorializing the assignment of copyright interests doesn't have to be the Magna Carta; a one-line pro forma statement will do. However, the terms of any writing purporting to transfer copyright interests, even a one-line pro forma statement, must be clear. While it is not required that the writing explicitly mention "copyright" or exclusive rights, the better practice is that it should. And, of course, the owner of the copyright interests being conveyed must sign the document.

*Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1158-59 (S.D.N.Y. 1996) (citations omitted).

Courts have repeatedly held that where a transferor and transferee of a copyright agree that the transfer was valid, an alleged infringer may not use the writing requirement as a sword to avoid liability. *See Eden Toys*, 697 F.2d at 36; *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, 1998 WL 603225, No. 96 CIV. 7973, at *6 (S.D.N.Y. Sept. 11, 1998) (refusing to analyze the validity of assignment agreements at the behest of the defendant where the assignor and assignee were in agreement that an assignment had taken place), *aff'd*, 205 F.3d 1321 (2d Cir. 2000); *Hart v. Sampley*, 1992 WL 336496, No. Civ. A. 91-3068, at *4 (D. D.C. June 24, 1992) ("Even if, as defendants suggest, the transfer was in some way defective, the defendants would not have standing to challenge the validity of the transfer because they were not parties to the agreement."). This principle comports with the purpose of section 204(a), which as noted above, is to protect copyright owners from persons mistakenly or fraudulently claiming that a copyright was transferred orally, not to enable third parties to infringe on transferred copyrights whenever

there is no formal writing effecting the transfer. Here, Plaintiff has submitted proof for all of the transfers challenged by TV Matters and has demonstrated that all of the parties to the transfers agree that they are valid.

Even assuming arguendo, however, that TV Matters had standing to challenge the validity of the transfers, its attempts would fail as Plaintiff has submitted signed contracts evidencing the transfers, all of which either explicitly refer to the copyrights or transfer "all of the Owner's rights." In addition, Plaintiff has submitted declarations based upon personal knowledge attesting to the authenticity of the agreements. Accordingly, TV Matters' arguments as to the insufficiency of this proffer are rejected as Plaintiff has clearly submitted ample evidence pursuant to section 204(a) to establish its chain of title.[2]

### III. *There are Genuine Issues of Material Fact as to TV Matters' Unauthorized Copying and Distribution of Copies of the Motion Pictures*

Once a plaintiff has proven that it owns a valid copyright, it must then establish that the defendant copied its work without its approval. *See, e.g.*, *Hasbro Bradley*, 780 F.2d at 192. TV Matters raises two arguments, without citing any authority, why Plaintiff cannot establish the second prong of this test, viz. (1) TV Matters acted in good faith and is an innocent infringer; and (2) Plaintiff has failed to produce any evidence that TV Matters distributed copies

---

[2] TV Matters contends that Delta filed for bankruptcy and thus questions its ability to transfer its rights in the Motion Pictures. The only evidence TV Matters submits in support of this contention is the deposition testimony of Rosenberg wherein he states that he had read about Delta's purported bankruptcy filing in the newspaper. Rosenberg's deposition testimony is clearly insufficient to establish Delta's alleged bankruptcy filing. Indeed, Plaintiff has submitted the declarations of Felicity Irlam, Delta's former company secretary during the relevant time period, and Clare Birks, Chief Executive of Southern Star (which as of March 31, 1999 owned 80% of Delta) which state that Delta did not file for bankruptcy at any time between its acquisition of the copyrights from Rearguard and its transfer thereof to Southern Star. (Irlam Decl. ¶ 4; Birks Aff. ¶ 7.)

of the Motion Pictures after August 11, 2003, the date Plaintiff allegedly registered its copyrights with the Copyright Office. The Court will address TV Matters' arguments in turn.

### A. *Good Faith is Not a Valid Defense to Copyright Infringement*

As an initial matter, under section 501(a) of the Copyright Act, "[e]ven an innocent infringer is liable for infringement" and intent or knowledge is irrelevant. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986). Thus, TV Matters' claims that it innocently copied the Motion Pictures because it was unaware of any competing claims is of no assistance to it.

Moreover, as noted above, section 205(d) of the Copyright Act expressly deals with this situation. It provides in pertinent part that "[a]s between two conflicting transfers, the one executed first prevails if it is recorded . . . at any time before recordation . . . of the later transfer." 17 U.S.C. § 205(d). Here, TV Matters does not allege that Rearguard's purported 1989 transfer of the rights to the Motion Pictures to TV Matters was ever recorded, much less recorded prior to the recordation of the Rearguard/Delta agreement, which was recorded in September 2004. Accordingly, TV Matters' reliance on its alleged good faith in copying and distributing copies of the Motion Pictures is unfounded.

### B. *There are Genuine Issues of Material Fact as to TV Matters' Infringement*

TV Matters urges this Court to find that because Plaintiff has failed to submit any evidence that TV Matters distributed copies of the Motion Pictures after August 11, 2003, the date Plaintiff registered its copyrights with the Copyright Office, Plaintiff cannot establish that TV Matters infringed upon its rights. Plaintiff counters that because there is no requirement that subsequent transfers of ownership in a copyright be recorded, the date it actually registered its

11

transfer is irrelevant. Plaintiff does not address, however, what date would be relevant in terms of determining when its rights were infringed.

As articulated by the Second Circuit:

> The legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership. 17 U.S.C. § 501(b). Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them. Rather, the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment.

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (citations omitted). Here, AMCC assigned all of its rights in the Motion Pictures to Plaintiff on January 1, 2003. (Sehring Decl. Ex. C.) Plaintiff has submitted the deposition testimony of Image, wherein Image concedes that distribution of the Motion Pictures continued through at least March 2004. (*See* Werner Decl. Ex. F at 45-60.) In response, TV Matters has submitted the declaration of Jan Jansen, President of TV Matters, wherein he states that after receiving a letter from Plaintiff in May 2002 asking him to stop selling copies of the Motion Pictures, he told Image to cease distribution and that Image did so by June 12, 2002. (Jansen Decl. ¶ 6.)

As an initial matter, the Court notes that the agreement between AMCC and Plaintiff does not appear to expressly include accrued causes of action, (*see* Sehring Aff. Ex. C), although this issue was not addressed by the parties. At the very least, however, Plaintiff is entitled to sue for infringements that occurred after January 1, 2003, the date AMCC assigned its rights to Plaintiff. Although Plaintiff has submitted evidence that Image continued to distribute

copies of the Motion Pictures after that date, TV Matters claims that it directed Image to cease distribution as early as May 2002.

"Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable." *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972). Here, there are genuine issues of material fact as to TV Matters' participation in the infringement post January 1, 2003. In addition, because the parties have not addressed whether the assignment from AMCC to Plaintiff, as well as the prior assignments, permit Plaintiff to prosecute accrued claims of infringement, the Court declines to rule on when Plaintiff's right to sue for infringement begins. Accordingly, to the extent there are issues of fact as to TV Matters' copying of the Motion Pictures, both parties' motions for summary judgment are denied.

### IV. *TV Matters' Request for a Default Judgment*

Finally, TV Matters moves for a default judgment against Rosenberg and Rearguard. Prior to the Court's granting of a motion for a default judgment, the Clerk of the Court must first note the default on the docket. Accordingly, the Clerk is hereby referred to entry number 50 on the docket, TV Matters' Notice of Cross-Motion and entry number 53, the declaration of TV Matters in support of its cross-motion. Upon review of these entries and notation of the default by the Clerk, the Court will consider TV Matters' motion. Thus, the motion is denied pending notation of the default by the Clerk of the Court.

## CONCLUSION

For the foregoing reasons, the motions by Plaintiff and TV Matters for summary judgment are DENIED. TV Matters' cross-motion for a default judgment against defendants

13

Rosenberg and Rearguard is DENIED pending notation of the default by the Clerk of the Court. Finally, to the extent Plaintiff seeks judgment against defendants Rosenberg and Rearguard, it shall serve and file a motion for default judgment against these defendants.

**SO ORDERED.**

Dated: Central Islip, N.Y.
August 31, 2005

/s
Denis R. Hurley,
United States District Judge