UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

AMC FILM HOLDINGS LLC,

                  Plaintiff,

      -v.-

MAX J. ROSENBERG, REARGUARD
PRODUCTIONS, INC., and TV Matters,

                 Defendants.

_____

**MEMORANDUM OF DECISION
AND ORDER**
03-CV-3835 (DRH)(ARL)

**APPEARANCE:**

**For the Defendant TV Matters:**
**Gregory A. Sioris**
350 Fifth Avenue
Suite 7606
New York, New York 10118-7606

**HURLEY, District Judge:**

        Defendant TV Matters has filed objections to the July 21, 2006 Report and

Recommendation of Magistrate Judge Arlene Rosario Lindsay.  Based upon the new arguments

advanced in the objections, and the Court's de novo review, the Court awards TV Matters

damages and attorneys' fees in the sum of $150,320.58, plus prejudgment interest.

*BACKGROUND*

### I.    *TV Matters's Claims*

        On August 5, 2003, Plaintiff AMC Film Holdings LLC ("Plaintiff") initiated the

instant copyright infringement action against defendants Rearguard Productions, Inc.

("Rearguard"), Max J. Rosenberg ("Rosenberg"), and TV Matters.  Plaintiff alleged, inter alia,

that it owned the copyrights to three motion pictures produced by Rosenberg and that it acquired

its rights through a series of assignments.[1]   Plaintiff further alleged that despite the fact that

Rearguard had already assigned its rights to the motion pictures to Plaintiff's predecessor in

interest years earlier, which ultimately led to Plaintiff's ownership, Rearguard later entered into a

licensing agreement with TV Matters whereby Rearguard purported to authorize TV Matters to

copy and distribute copies of the motion pictures.

On October 2, 2003, TV Matters answered the Complaint and filed cross-claims

against Rearguard and Rosenberg.  The cross-claims were later amended on March 16, 2004.

TV Matters asserts four causes of action, viz. indemnity, breach of contract, fraud, and

negligence.  Neither Rosenberg nor Rearguard responded to either Plaintiff's Complaint or the

cross-claims filed by TV Matters.  Thereafter, TV Matters moved for a default judgment on its

cross-claims.  By Order dated October 19, 2005, TV Matters's motion was granted and the

matter referred to  Magistrate Judge Lindsay for a report and recommendation as to damages and

attorneys' fees.

## II.     The March 1, 2006 Report and Recommendation

On March 1, 2006, Judge Lindsay issued a Report and Recommendation that

Plaintiff be awarded $0.00 in attorneys' fees and costs and $0.00 in damages.  In recommending

that TV Matters's application for damages and fees be denied, Judge Lindsay found that "the

materials submitted by TV Matters in support of its damages claims are plagued by technical

deficiencies." (Mar. 1, 2006 Report at 3.)  "For example, some of the exhibits are in another

---

[1]  The background of this case is more fully set forth in the Court's August 31, 2005
Memorandum of Decision and Order which denied Plaintiff's motion for summary judgment,
familiarity with which is assumed.  Thus, the Court will only state the facts necessary for
disposition of the instant motion.

language or refer to transactions involving foreign currency without reference to a relevant

conversion table, and other documents are partially illegible due to xeroxing errors which

excised text." (*Id.* (citations to record omitted).)

Moreover, Judge Lindsay found that although TV Matters was asserting that it

had incurred damages for breach of contract, and although the relevant contract had a choice of

law provision providing that the law of the Netherlands governed, TV Matters argued in its

submissions that New York law applied. In this regard, Judge Lindsay noted that "TV Matters

has failed to explain to the Court why it contends that New York law rather than the law of the

Netherlands should govern its claims for damages." (*Id.* at 4.) Because TV Matters "ignore[d]"

the choice-of-law provision and "refer[red] solely to general New York damages law" in its

submission, Judge Lindsay recommended that TV Matters's claim for damages resulting from

Rearguard's breach of contract be denied. (*Id.* at 5.) Thereafter, TV Matters timely filed

objections to the March 1, 2006 Report.

### III.    *This Court's April 28, 2006 Decision*

In its objections, TV Matters advanced separate arguments with regard to its

contract and fraud claims. As to the former, TV Matters argued that New York law applied to its

breach of contract claim based upon a provision in its contract with Rearguard which indicated

that TV Matters could "submit [its] dispute" in a New York court. Finding that this provision

was a forum selection clause, and not a choice-of-law provision, the Court rejected TV Matters's

argument that its breach of contract claims were governed by New York law. This result was

particularly apropos given that the contractual provision TV Matters relied on also contained a

choice-of-law clause, which clearly provided that the law of the Netherlands applied.

With regard to TV Matters's fraud claim, TV Matters raised an argument that had

not been presented to Judge Lindsay in the first instance: that the choice-of-law provision relied

on by Judge Lindsay did not apply to its cross-claim for fraud. Reviewing TV Matters's new

arguments de novo, the Court agreed. (*See* Apr. 28, 2006 Memorandum of Decision and Order

at 4 (citing *Finance One Pub. Ltd. v. Lehman Bros. Special Fin.*, *Inc*., 414 F.3d 325, 335 (2d Cir.

2005) ("Under New York law, . . . tort claims are outside the scope of contractual choice-of-law

provisions that specify what law governs construction of the terms of the contract, even when the

contract also includes a broader forum-selection clause.").) The Court went on to state, however,

that TV Matters was incorrect in assuming that because this choice-of-law provision was

inapplicable, New York law would automatically apply to its fraud claim:

> TV Matters cites *Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir.
> 1998) for the proposition that because the parties to the instant
> dispute are diverse, the Court must apply the law of New York in
> its damages analysis. As noted by Judge Lindsay, however, *Curley*
> does not support that conclusion. ([Mar.1, 2006] Report at 4 n.2.)
> Rather, the court in *Curley* merely stated the well known principle
> that in diversity cases, the Court must look to the choice-of-law
> rules of the forum state. 153 F.3d at 12. Indeed, even in *Finance*
> *One*, the case cited by TV Matters, once the Second Circuit
> determined that the defendant's set-off claim was not within the
> scope of the parties' choice-of-law clause, the court proceeded to
> perform a choice-of-law analysis under New York law, to
> determine which law governed the set-off claim. Under such an
> analysis, the first question is whether there is an actual conflict of
> law. *Id.* at 12. In tort actions, if a conflict exists, "New York
> courts apply an 'interests analysis,' under which the law of the
> jurisdiction having the greatest interest in the litigation is applied."
> *Id.*
>
> Here, Rosenberg and Rearguard are alleged to be California
> residents with Rearguard's principal place of business in
> California; TV Matters is a Netherlands corporation with its
> principal place of business in the Netherlands. Because TV
> Matters has not properly briefed the choice-of-law issue – in fact it

has not addressed the required analysis at all – the Court declines
to award damages at this time as it is unclear which law would
govern TV Matters's fraud claim.  Nonetheless, the Court will
afford TV Matters one more opportunity to submit proper papers
in support of its damages claims.  TV Matters is warned, however,
that failure to adequately address the legal issues presented by such
claims and/or failure to submit materials which clearly set forth
some reasonable basis to quantify its damages, may result in a
denial of its damages claims with prejudice.

(Apr. 28, 2006 Memorandum of Decision and Order at 5-6.)

## IV.     *The July 21, 2006 Report and Recommendation*

On July 21, 2006, Judge Lindsay issued a second Report and Recommendation
again recommending that Plaintiff be awarded $0.00 in attorneys' fees and costs and $0.00 in
damages.  Judge Lindsay found that despite this Court's clear directive that TV Matters properly
brief the choice-of-law issue, TV Matters's "papers once again fail to address the substantive law
of either California or the Netherlands making it impossible for this court to perform the first
part of the analysis directed by Judge Hurley," i.e., whether the laws of these jurisdictions, and
that of New York, actually conflict.  (July 21, 2006 Report at 2.)  Judge Lindsay further noted
that "[t]his threshold determination is essential as the court need not undertake a conflict of laws
analysis if the laws do not actually conflict."  (*Id*. (citing *Curley*, 153 F.3d at 12 ("It is only when
it can be said that there is no actual conflict that New York will dispense with a choice of law
analysis.").)

Judge Lindsay further noted that "[e]ven if she were to conduct a choice of law
analysis, a cursory review of counsel's submissions indicates that TV Matters has failed to
provide sufficient facts to permit such a review."  (*Id.* at 3 n.3.)  In this regard, she noted:

In effect, when a claim involves fraud, New York courts apply the
law "where the loss is sustained, not where the fraudulent

5

misrepresentations are made." *G&R Moojestic Treats, Inc. v. MaggieMoo's Int'l*, CV 03-1027 (RWS), 2004 WL 1110423 (S.D.N.Y. May 19, 2004) (citing *Sack v. V.T. Low*, 478 F.2d 360, 365 (2d Cir. 1973)). Moreover, "for business entities such as corporations, the place of injury is the principal place of business or location of the business as opposed to the place of incorporation." *PPI Enterprises, Inc. v. Del Monte Foods Co.*, CV 99-3794 (BSJ), 2003 WL 118977, at *17 (S.D.N.Y. Sept. 11, 2003). Notwithstanding these standards, TV Matters's papers are bereft of any discussion addressing where the loss occurred or why the court should not defer to Netherlands law where the contract was executed, where the bank account used to pay the defendants was apparently located, and where TV Matters is conceded to have been incorporated and where it maintains its principal place of business. (Complaint at ¶ 4; Am. Answer at ¶ 1; Jensen Decl. at ¶ 18 and Exhibits annexed thereto). Instead, TV Matters[] describes a number of discussions which occurred in New York including a due diligence review, which facts are largely irrelevant to the instant conflicts analysis. (Jensen Decl. at ¶¶ 5-7, 13).

(*Id.*)

Thus, Judge Lindsay concluded that she could not "determine what damages are appropriate since the question of what damages can be awarded is governed by the same law as the underlying fraud claim." (*Id.* at 3.)

## V.     TV Matters's Objections

TV Matters timely filed objections to the July 21, 2006 Report. In its objections, TV Matters states that it is pursuing its claim for damages under its third cross-claim only, viz. fraud and deceit. (TV Matters's Objections at 4 and n.2.) Thus, the Court's decision will be limited to a discussion of the fraud claim.

## DISCUSSION

## I.     Standard of Review

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge

issues a report and recommendation on a matter "dispositive of a claim or defense of a party,"

the district court judge shall make a de novo determination of any portion of the magistrate

judge's disposition to which specific written objection has been made.  Fed. R. of Civ. P. 72(b).

Because TV Matters objects to the July 21, 2006 Report in its entirety, the Court applies de novo

review.

## II.      TV Matters's Objections

TV Matters raises several objections to the July 21, 2006 Report.  Because one of

its arguments is dispositive, the Court need not address the others advanced.

### A.      The Court Will Apply New York Law to TV Matters's Damages Claim

TV Matters argues for the first time[2] that a choice-of-law analysis is unnecessary

because by defaulting on both the Complaint and TV Matters's cross-claims, Rearguard and

Rosenberg have impliedly acquiesced to the application of New York law.  The Court agrees.

"When there is no presumption that New York law is the same as foreign law and

no evidence has been presented as to foreign law, New York courts have decided the cases in

accordance with New York law."  *Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir. 1978) (quoting

*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970) ("'[C]ourts will allow the parties by default in

pleading of proof to agree or acquiesce that forum law is applied.'")).  Thus, "when no evidence

of foreign law has been presented . . . the courts will decide cases in accordance with New York

law."  *Curley*, 153 F.3d at 14 (citing *Loebig*, 572 F.2d at 85); *see also Haywin Textile Prods.,*

*Inc. v. International Fin. Inv. and Commerce Bank Ltd.*, 152 F. Supp. 2d 409, 413 (S.D.N.Y.

---

[2]  Although this argument was not presented to Judge Lindsay, because the Court applies de novo review to those portions of the Report to which objections were raised, the Court will consider TV Matters's argument.

2001) ("In New York, it is required that a party wishing to apply the law of a foreign state show how that law differs from the forum state's law. Failure to do so results in the application of New York law.") (internal quotation marks and citation omitted).

In the present case, both Rearguard and Rosenberg have defaulted and thus have presented no argument on which law should apply to the instant litigation. In addition, TV Matters seeks application of New York law. Given that there has been no showing of a conflict, the Court concludes that it may decide this case in accordance with New York law.

### B. *Calculation of Damages*

### 1. *Standard of Proof*

Upon entry of default, a party concedes all well pleaded factual allegations in the pleading, except those relating to damages. *See* Fed. R. Civ. P. 8(d); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). "A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). The movant need only prove that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

A plaintiff must prove its damages if they are neither "susceptible of mathematical computation nor liquidated as of the default." *Greyhound*, 973 F.2d at 158. "In determining damages not susceptible to simple mathematical calculation, a court has the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary

hearing." *DirecTV, Inc. v. Perrier*, No. 03-CV-400S, 2004 WL 941641, at *2 (W.D.N.Y. Mar.

15, 2004). "A hearing is not required as long as the court ensures that there is a basis for the

damages awarded." *Id.*

A plaintiff seeking damages based on fraud is entitled to recover its "out-of-

pocket" expenses. *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996). Thus,

"[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud,

not to compensate them for what they might have gained." *Id.* In addition, "attorney's fees may

be recovered for fraud as out of pocket damages," *Kaleidoscope Media Group, Inc. v.

Entertainment Solutions, Inc.*, No. 97CIV9369, 2001 WL 849532, at *4 (S.D.N.Y. July 19,

2001), as well as prejudgment interest, *see id.* at *5 ("[P]rejudgment interest in a fraud action is

necessary to place the victim in the position it would have been in absent the fraud.") (citing

*Iglesias v. United State*s, 848 F.2d 362, 365 (2d Cir. 1988) and *Flamm v. Noble*, 296 N.Y. 262

(1947)).

### 2. *Review of the Evidence Submitted*

In support of its application for damages, TV Matters submits a sworn declaration

of Jan Willem Bosman Jansen ("Jansen"), the President of TV Matters, as well as numerous

exhibits. Included in these exhibits is TV Matters's Amended Answer and Amended Cross-

claims which alleges that it paid Rearguard and Rosenberg $100,000 for the rights to the motion

pictures, as well as numerous invoices and receipts. Also included is a copy of the parties'

agreement, which provides that: (1) TV Matters would pay Rearguard and Rosenberg $100,000

for the rights to the motion pictures; and (2) each side agrees to indemnify the other for all

damages and reasonable costs and expenses, including reasonable attorneys' fees, arising out of

the other party's material breach.  Based on this evidence, TV Matters seeks the following

alleged out of pocket damages: (1) $100,000 paid to Rearguard and Rosenberg to purchase the

motion pictures; (2) $16,772.91 incurred after TV Matters purchased the motion pictures for

transferring the film to digital video tape so that DVD's could be manufactured; (3) $6,911.69

paid to Image Entertainment, Inc. ("Image") as a result of the breach of contract;

(4) $109,495.51 in attorneys' fees and costs; (5) $77,700 for "future damages"; and (6) $100,000

in punitive damages.

   The Court finds that the evidence proffered by TV Matters sufficiently supports

an award with regard to the first two components of TV Matters's claim, viz. $100,000 paid to

secure the rights to the motion pictures plus $16,772.91 incurred to transfer these motion pictures

to DVD's.  In addition, the Court finds TV Matters's evidence sufficient with regard to the

$6,911.69 TV Matters paid to Image.  (*Id.* ¶ 18(h).)  More specifically, TV Matters contracted

with Image to have Image sell copies of the DVD's of the motion pictures at issue.  (*Id.*)  TV

Matters stopped selling the DVD's to Image in May 2002, once Plaintiff asserted a claim to the

motion pictures.  (*Id.*)  Image "did not recoup its expenses in distributing [the DVD's] and [TV

Matters] had to reimburse [Image] its unrecouped amount."  (*Id.* ¶ 18(h).)  TV Matters asserts

that although the total amount paid to Image was $17,449.95, it only seeks $6,911.69, which

represents the sum sought by Image with regard to the three motion pictures at issue.  (*Id.)*  TV

Matters attaches an invoice from Image which supports this statement.  (TV Matters's Ex. J.)

TV Matters also submits a copy of its bank statement showing the wire transfer to Image on

March 10, 2005 for $17,449.95.  (*Id.*)

   In the Court's view, the evidence proffered by TV Matters is sufficient to

establish its claim for damages. The monies paid to Image were a direct consequence of the alleged fraud perpetrated by Rearguard and Rosenberg, which resulted in a cessation of sales of the DVD's. Accordingly, the Court approves a further damage award in the amount of $6,911.69.

With regard to TV Matters's claim for attorneys' fees and costs, the Court finds TV Matters' proffer to be, for the most part, woefully deficient. As an initial matter, many of the fees TV Matters seeks represent expenses incurred *prior* to TV Matters entering into the contract at issue. For example, TV Matters seeks reimbursement for the due diligence performed by its attorney in checking the motion pictures' titles prior to execution of the contract. TV Matters also seeks reimbursement for trips Jansen took from the Netherlands to Los Angeles, including expenses such as meals and car rental, during his contract negotiations with Rearguard and Rosenberg. TV Matters has provided no legal support for recovery of these damages, nor has it explained how such damages would indemnify it "for the actual pecuniary loss sustained as the direct result of the wrong." *Lama Holding*, 88 N.Y.2d at 421 (internal quotation marks and citation omitted). Accordingly, they are denied.

TV Matters also seeks reimbursement for its travel costs related to its deposition appearance, including airplane, hotel and food expenses. (Jansen Decl. ¶ 18(f).) Again, TV Matters has failed to proffer any authority which would support such an award. In fact, the Local Rules of this Court seem to militate against such an award. *See* Local Civil Rule 54.1(c)(3) ("No party to the action may receive witness fees, mileage, or subsistence."). Accordingly, based on the materials provided, the Court declines to award TV Matters damages based on these expenses.

TV Matters also requests an award for attorneys' fees, which must be supported by "contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *DirecTV v. Meinecke*, No. 03 Civ. 3731, 2004 WL 1535578, at *4 (S.D.N.Y. July 9, 2004) (quoting *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). TV Matters' claim in this regard is broken down into several parts. First, TV Matters seeks $26,635.98 in attorneys fees based on 87.81 hours of work at a rate of $295.00 per hour. (TV Matters's Ex. K.) In support of this particular claim, TV Matters has submitted contemporaneous attorney time records detailing the dates counsel worked, the hours expended, and what type of work counsel performed. The Court finds that this showing suffices to justify such an award and, accordingly, this portion of TV Matters's request is approved.

Next, TV Matters seeks "[a]dditional legal fees for litigation" in the amount of $2,450.00. (Jansen Decl. ¶ 18(j).) In support of this claim, TV Matters submits an attorney invoice forwarded to TV Matters. There is nothing on the invoice, however, which indicates what the bill is for or what services were provided. Similarly, TV Matters seeks $13,165.78 for "[l]egal fees for litigation" (*id.* ¶ 18(d)) but proffers no breakdown of what this amount reflects. Finally, TV Matters seeks $12,000 in "[m]iscellaneous administrative expenses connected to this lawsuit, items such as searching for, assembling and photocopying . . . documents." (*Id.* ¶ 18(e).) TV Matters asserts that this figure "is calculated at an employee's time of 200 hours, spent over five weeks, at the equivalent of $60.00 per hour to hire an employee with legal training, with $60.00 being the average market rate in Amsterdam for someone with legal training who can accomplish this job." (*Id.*) Despite this generalized explanation, TV Matters

12

proffers absolutely no documentary evidence in support thereof. Accordingly, the Court declines

to award damages for all three of the above-referenced categories of damages.

Finally, TV Matters seeks an award of "future damages" in the amount of

$77,770.00 and punitive damages in the amount of $100,000.00. With regard to the former, TV

Matters seeks compensation for any monies it *may* have to expend in the future to defend itself in

this lawsuit. TV Matters's evidence in this regard – based on the amount of time counsel

"foresees spending" in order to prepare to try this case – is clearly too speculative to warrant

recovery. With regard to the latter, the Court finds that based on the scant material provided, the

conduct alleged does not rise to a level warranting punitive damages.

In sum, the Court finds that TV Matters is entitled to recover $100,000 for monies

expended in purchasing the alleged rights to the motion pictures; $16,772.91 in monies expended

in transferring the motion pictures to DVD format; $6,911.69 in monies paid to Image; and

$26,635.98 in attorneys' fees and costs, for a total award of $150,320.58.

## CONCLUSION

For the reasons stated above, and based on a de novo review on the new

submissions, the Court grants TV Matters's application for damages and fees in the amount of

$150,320.58. Accordingly, the Clerk of the Court is directed to enter judgment for TV Matters

against Rearguard and Rosenberg in the amount of $150,320.58, plus prejudgment interest on

this sum to be calculated by the Clerk of Court from April 12, 1999, the date of the contract, at

the rate of nine percent per annum, pursuant to CPLR § 5004. Because this judgment applies to

TV Matters's cross-claim only, this Order does not close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
   September 29, 2006

              /s/
              Denis R. Hurley,
              United States District Judge